

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ELIZABETH SHRADER, M.D.,     )
    )
    Plaintiff,     )
    )     No. 09 C 5261
    v.     )
    )     The Honorable William J. Hibbler
THE PAUL REVERE LIFE INSURANCE     )
COMPANY,     )
    )
    Defendant.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Elizabeth Shrader, M.D., brings this suit against her disability insurance carrier, Defendant Paul Revere Life Insurance Company ("Paul Revere"), alleging breach of contract and vexatious and unreasonable delay. Her suit is based on Paul Revere's decision to deny her claim for disability benefits under her policy. The Court had jurisdiction over the dispute based on the diversity of citizenship between the parties. *See* 28 U.S.C. § 1332. Shrader seeks statutory damages and attorneys' fees pursuant to 215 Ill. Comp. Stat. 5/155 in her claim for vexatious and unreasonable delay. Paul Revere now moves for summary judgment on that claim. For the reasons stated below, the Court grants Paul Revere's motion.

## I. Factual Background

The following relevant facts are undisputed, unless otherwise specified. The Court only considers a fact to be disputed if the party asserting the dispute offers evidence supporting that assertion. *See* Fed. R. Civ. P. 56(c).

Shrader was employed as an anesthesiologist by Community Hospital in Munster, Indiana, beginning January 1, 2006, under a three year contract. (Def. Rule 56.1(a)(3) Statement

(hereinafter "Def. St.") ¶ 4.) On May 22, 2006, Shrader was involved in an automobile collision. (Def. St. ¶ 5.) Shrader was examined and released from the hospital following the accident. (Def. St. ¶ 5.) She subsequently sought treatment from neurosurgeon John Shea, M.D. (Def. St. ¶ 5.)

Dr. Shea released Shrader to work on June 22, 2006 with the following limitation: "No lifting or overhead lifting where her arms are higher than her shoulders. She may work with CRNA's [Certified Registered Nurse Anesthetists]." (Def. St. ¶ 6.) Community Hospital acknowledged and agreed to the limitations on Shrader's work duties by signing Dr. Shea's "Return to Work" letter. (Def. St. ¶ 6.)

On January 22, 2007, Dr. Shea released Shrader to return to work with "no restrictions." (Def. St. ¶ 7.) Dr. Shea has since indicated that he mistakenly signed that release, and actually intended to release Shrader to return to work with the same restrictions as before. (Pl. Resp. to Def. St. (hereinafter "Pl. Resp.") ¶ 7.)

On January 11, 2008, Community Hospital sent Shrader a 90-day termination notice pursuant to the provision of her contract allowing the hospital to terminate the three year contract at any time with 90 days notice. (Def. St. ¶ 8.) Shrader attempts to dispute this fact, claiming that the letter was not a notice of termination, but a notice of non-renewal due to Shrader's medical condition and her resulting inability to carry out her employment duties. (Pl. Resp. ¶ 8.) However, Shrader provides no evidence in support of her claims and her claims conflict directly with the evidence presented by Paul Revere. The letter explicitly states that it is a "notice of termination" and references the provision of the contract allowing for unilateral termination by the hospital with 90 days notice. (Def. St. Ex. 2 & 3.) The letter indicates a termination date of April 10, 2008, which is more than a year before the date that the contract would have been

renewed. It contains no mention of renewal or the provision of the contract governing the procedures for renewing or not renewing the contract. It also contains no mention of the term of the contract providing for automatic termination in the event that Shrader becomes permanently disabled. Thus, the Court does not consider the fact to be in dispute.

Dr. Shea signed a prescription form stating Shrader was "off work due to cervical disk herniation" as of March 12, 2008. (Def. St. ¶ 9.) Dr. Shea took Shrader off work entirely because Shrader reported to him that she was continuing to drop the laryngoscope blade used during intubation procedures. (Pl. Resp. ¶ 9.) He waited until March 12, 2008 to take her off work completely because he wanted to see if Shrader could continue her work with assistance. (Pl. Resp. ¶ 9.)

Shrader submitted disability claims to all three of her disability insurance carriers, including Paul Revere. (Def. St. ¶ 10.) Paul Revere received her claim on April 25, 2008. (Def. St. ¶ 10.) Shrader claimed to be Totally Disabled under the policy since March 13, 2008, due to cervical pain, numbness, and weakness from the automobile collision on May 22, 2006. (Def. St. ¶ 10.) In support of her claim, she submitted a statement from Dr. Shea in which he opined that Shrader was only able to sit, stand, and walk for 2 hours each intermittently during an 8 hour workday, was never able to lift more than 10 pounds, was never able to perform fine finger movements, and that it was "unknown" whether she would return to work. (Def. St. ¶ 11.)

Paul Revere employed a number of methods for evaluating Shrader's claim. For one, the company examined video surveillance of Shrader from May 2008 that showed Shrader engaging in physical activities, including getting in and out of her car, driving, opening and closing the trunk of her car, holding a dress overhead before putting it in her car trunk, walking with her dog, going to lunch with another individual, and sitting. (Def. St. ¶ 12.) The company also

reviewed a report from a Certified Rehabilitation Counselor who reviewed records of procedures that Shrader had performed Marcy 2007 to March 2008 as an anesthesiologist. (Def. St. ¶ 13.) The report indicated that Shrader was "performing the duties of an anesthesiologist over a wide range of surgical procedures...[that] vary in length and complexity." (Def. St. ¶ 13.) The report further indicated that Shrader was "performing the duties of a general anesthesiologist prior to the date of disability." (Def. St. ¶ 13.)

The company also consulted with Dr. Jerry Beavers, a physician that is Board-certified in Occupational and Internal Medicine, who reviewed Shrader's medical records. (Def. St. ¶ 14.) Dr. Beavers indicated that while her records supported a finding that she would have some restrictions and limitations on extreme neck motions, he did not find a basis for Dr. Shea's findings that she could never do fine motor tasks and that she had isolated weakness and sensory loss in her left upper extremity. (Def. St. ¶ 14.)

Dr. Beavers also contacted Dr. Shea to discuss Shrader's condition. (Def. St. ¶¶ 15-18.) Dr. Shea responded in a letter explaining that his opinions remained unchanged, that his claims were supported by Shrader's MRI and her subjective complaints, and that the injury she sustained in 2006 simply got worse over time. (Def. St. ¶ 19.) Dr. Beavers informed Paul Revere that Shea's response did not persuade him to change his opinion and suggested that Paul Revere seek an Independent Medical Evaluation (IME) of Shrader. (Def. St. ¶ 20.)

On October 3, 2008, a Board-certified neurosurgeon, Dr. Sean Salehi, completed an evaluation of Shrader that Paul Revere refers to as an IME. (Def. St. ¶ 21.) Shrader objects to this characterization because she argues that Salehi was selected by Paul Revere and was therefore not independent. (Pl. Resp. ¶ 21.) Shrader also argues that Salehi's opinions are so contrary to his examination findings that he cannot be considered objective or independent. (Pl.

Resp. ¶ 21.) Dr. Salehi opined that Shrader suffered from cervical spondylosis, but stated that he could not find any "anatomic explanation" for her subjective claims of pain, paresthesias, and weakness in her upper extremity. (Def. St. ¶ 21.) He found that there was no significant change in her MRIs from 2006 to 2008 and that there was no specific event that could explain her supposed change in condition. (Def. St. ¶ 21.) He also stated that Shrader demonstrated a greater range of motion in the video surveillance than during his examination. (Def. St. ¶ 21.) Finally, he said that based on this discrepancy with the video and his inability to point to any objective signs of nerve root compression, he believed that there was "no restriction" on Shrader's ability to work as an anesthesiologist. (Def. St. ¶ 21.) After Dr. Beavers reviewed Dr. Salehi's report and concluded that his findings were supported, Paul Revere notified Shrader of its decision to deny her claim. (Def. St. ¶¶ 22-24.)

Shrader contested the determination a number of times. She submitted multiple letters from Dr. Shea and a report from a physician, Dr. Marie Kirincic, based on an electromyographic study and nerve conduction study (EMG/NCS). (Def. St. ¶¶ 27, 30, 36.) Dr. Kirincic indicated that the EMG/NCS results were consistent with "chronic Cervical polyradiculopathy." (Pl. Resp. ¶ 30.) In response, Paul Revere presented the opinion of another Board-certified neurosurgeon, Dr. Charles Sternbergh, who reviewed all of Shrader's medical records, including the EMG/NCS results. (Def. St. ¶ 32.) Dr. Sternbergh indicated that "[t]he available medical information does not support the claimant's inability to sustain light work activities, including the postures and lifting requirements commonly required to do anesthesiology." (Def. St. ¶ 32.) Paul Revere denied each of Shrader's appeals of its decision.

On August 26, 2009, Shrader filed this suit. Since then, her retained expert performed multiple standardized vocational tests on Shrader and determined that her "dexterity abilities

clearly are far below what one would expect from a professional anesthesiologist." (Pl. Rule 56.1(b)(3)(C) Statement of Additional Facts (hereinafter "Pl. St.") ¶¶ 52-53.) He stated that he did not believe "her capabilities are consistent whatsoever with that of an anesthesiologist." (Pl. St. ¶ 53.) Paul Revere disputes these findings, arguing that the tests Shrader's expert administered are not meaningfully related to the duties of an anesthesiologist and that the validity of the tests is dependent on the assumption that Shrader was giving her maximum effort despite her incentive to perform badly on the tests for purposes of this litigation. (Def. Resp. to Pl. St. (hereinafter "Def. Resp.") ¶¶ 52-53.)

## II. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## III. Analysis

The instant motion only addresses Shrader's claims that Paul Revere engaged in vexatious and unreasonable delay in denying her claim. Illinois law allows the Court to award statutory damages and attorneys' fees if an insurance company engages in such conduct. 215 Ill. Comp. Stat. 5/155. An insurer has not engaged in such conduct if, among other things, there is a *bona fide* dispute as to coverage or the claim presents a genuine legal or factual issue regarding coverage. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). Thus, the summary judgment standard applies in a relatively unique way in this case because in order to succeed on its motion, Paul Revere must essentially show that it is undisputed that the facts of the case are disputed.

In this case, there is undoubtedly a dispute among the various physicians that examined Shrader or her medical records. Dr. Shea and Dr. Salehi, both of whom examined Shrader, came to different conclusions about the objective evidence of her disability. Dr. Beavers and Dr. Sternbergh reviewed Shrader's records, and concluded that they supported Dr. Salehi's opinion, rather than Dr. Shea's. It is not abundantly clear to the Court whether Dr. Kirincic's opinion supports Shrader's claim or not. Thus, Shrader's argument is essentially that the opinions of Dr. Salehi, Dr. Beavers, and Dr. Sternbergh are essentially invalid and so unreasonable that they cannot form the basis of a *bona fide* dispute.

Shrader does not make a strong argument that the doctors misstate the facts upon which they base their opinions. She argues instead that their opinions conflict with the facts. However, there is nothing about their opinions that obviously conflicts with the facts. The doctors that Paul Revere relies upon seem to discount Shrader's subjective complaints, while Dr. Shea gives her complaints great weight. But there is nothing so obviously wrong with their interpretation of

the objective evidence that it would be unreasonable for Paul Revere to rely upon the opinions of three Board-certified physicians. The doctors recognize that Shrader has sustained injuries, but find that the evidence of her injuries and the relatively limited course of treatment she underwent do not align with her subjective complaints.

Moreover, Paul Revere's position is supported by other evidence. Regardless of Dr. Shea's claims about his intentions when signing the second Return to Work letter in this case, he did sign a letter that released Shrader to work with no restrictions. Then, during the year following that letter, the records of the procedures performed by Shrader indicate that she was performing the regular duties of a general anesthesiologist, including a wide range of procedures of varying length and complexity. Moreover, even assuming that Shea's letter was intended to keep Shrader under the same restrictions as his first letter, the letter would still not support a claim that she was totally disabled from performing her job. Finally, Shrader's made her first claim of total disability shortly after hospital's decision to terminate her contract. The notice of termination provided by the hospital does not reference her disability, nor the provision of her contract providing for automatic and immediate termination in the event of disability. Instead, the letter provided Shrader with 90 days notice of termination pursuant to the clause of her contract providing for unilateral termination by the hospital. Thus, despite Shrader's claims that she was subject to non-renewal due to her disability, Paul Revere had ample reason to believe otherwise. Indeed, because Shrader provides no citation to any evidence in support of her claims, the evidence does not support the conclusion that Shrader's contract was simply not renewed due to her disability. Given all of this, Paul Revere was left with a significant basis to question Shrader's claims even prior to consulting with physicians. The timing of her claim, the letters from her doctor, and the records of the work she performed all suggest that Shrader was

capable of performing her job, at least in part, for years following the accident that caused her injuries, and that she only claimed total disability after her employer decided to unilaterally terminate her contract.

Under these circumstances, the Court is even less willing to question the reasonableness of Paul Revere's reliance on detailed opinions from multiple Board-certified physicians that Shrader was not totally disabled. Because the Court finds that those opinions, along with the other evidence before Paul Revere, provided the basis for a *bona fide* factual dispute between the parties, the Court grants Paul Revere's motion for partial summary judgment.

## CONCLUSION

For the above reasons, the Court GRANTS Defendant's motion for summary judgment on the claim of vexatious and unreasonable delay.


IT IS SO ORDERED.


_____6/22/11_____
Dated

Hon. William J. Hibbler
United States District Court